## Case No. 16,082.

### UNITED STATES v. PRATT.

[2 Am. Law T. Rep. (N. S.) 238.]

District Court, E. D. Michigan. April, 1875.

OFFENCES AGAINST POSTAL LAWS—SCURRILOUS COMMUNICATIONS.

A. mailed a postal card directed to B., having written upon it certain words which imputed illicit intercourse to C. and another, but in which no epithet, in the form of a substantive or adjective, was used. *Held*, that the offence was within the terms of section 3893 of the Revised Statutes.

[Cited in U. S. v. Britton, 17 Fed. 733.]

This was a motion to quash an indictment. The prisoner was charged with the offence of depositing and causing to be deposited in the post-office for mailing, a postal card, upon which was written indecent epithets, contrary to the provisions of section 3893 of the Revised Statutes, which reads as follows:—"No obscene, lewd, or lascivious book, pamphlet, picture, paper, print, or other publication of an indecent character, or any article or thing designed or intended for the prevention of conception or procuring of abortion, nor any article or thing intended or adapted for any indecent or immoral use or nature, nor any written or printed card, circular, book, pamphlet, advertisement, or notice of any kind, giving information, directly or indirectly, where or how or of whom or by what means either of the things

before mentioned may be obtained or made, nor any letter upon the envelope of which, or postal card upon which, indecent or scurrilous epithets may be written or printed, shall be carried in the mail; and any person who shall knowingly deposit or cause to be deposited, for mailing or delivery, any of the herein before mentioned articles or things, or any notice or paper containing any advertisement relating to the aforesaid articles or things, and any person who, in pursuance of any plan or scheme for disposing of any of the herein before mentioned articles or things, shall take or cause to be taken from the mail any such letter or package, shall be deemed guilty of a misdemeanor," &c.

The prisoner was charged with having mailed, at Jackson, a postal card, addressed to Geo. A. Mills, of Reilly, Muskegon county, Mich., upon which was written the following: "Jackson, Dec. 8th, 1874. To Mr. Mills: How does you and Mrs. (giving name) get along, that you show your private letters to and persuade her to stay away from her little ones. Your taste must be low after she has been catched locked up in a room with a man that had funny curly hair and such funny eyes. My advice to you is not to read her any more of your private letters; she will expose you." Pasted upon the back of this card, and in immediate proximity to the writing, was a picture representing the head of a colored man.

It was argued, by the counsel for the prisoner: (1) That the section relied upon by the government provides no punishment for the mailing of scurrilous postal cards. (2) That the matter written upon the postal card in question contains no "indecent epithets," and therefore is not within the statute.

Henry M. Cheever, for the prisoner.
J. W. Finney and H. H. Swan, Asst. U. S. Dist. Attys.

BROWN, District Judge. The section under which the indictment in this case is framed contains two distinct clauses, one prohibitory and the other penal. The prohibitory clause provides that the following articles shall not be carried in the mails: First, no obscene publication or picture; second, no article or thing intended for the prevention of conception or procuring of an abortion; third, no article or thing intended for an immoral use; fourth, no advertisement or notice giving information how or where either of the things before mentioned may be obtained or made; fifth, no envelope or postal card containing indecent or scurrilous epithets. The penal clause imposes punishment in terms for the following offences: Depositing for mailing or delivery any of the herein before mentioned articles or things, or any notice or paper containing any advertisement relating to the aforesaid articles or things; second, taking from the mail any

letter or package in pursuance of any plan or scheme for disposing of any of the herein before mentioned articles or things.

It is claimed by the counsel for the prisoner, and argued with great ingenuity that the words "articles or things" mentioned in the penal clause refer only to the "articles or things" described by that name in the prohibitory clause, and set forth in the second and third subdivision of this clause, as above pointed out. Section 3895 provides that "all letters, packets, or other matter which may be seized or detained for violation of law shall be returned to the owner or sender, or otherwise disposed of;" and it was claimed that congress intended simply to empower postmasters to seize postal cards upon which indecent or scurrilous epithets are written, but did not intend to punish the mailing of them. Had the words "articles or things" not appeared in the prohibitory clause of the statute, it would scarcely have been argued that a postal card was not an article or thing within the meaning of the penal clause, and the only question is whether, by using those words in the prohibitory clause, congress designed thereby to restrict the application of the penal clause. Clearly it has not done so in terms. If congress has failed to provide a punishment for the sending of scurrilous postal cards, it has also failed to provide one for the articles mentioned in the first and fourth subdivisions, namely: obscene publications and pictures, as well as cards, advertisements, and notices giving information where these things may be obtained or made. It would also follow that the word "things," in the fourth subdivision, would be restricted to the things mentioned in the second and third subdivisions, and that the sending of advertisements or notices where indecent publications and pictures might be obtained would not be illegal. A reference to the history of the postal card system, and the evident design of the enactment in question, will show that the objection is wholly untenable. Although postal cards have been in use for a very few years their great convenience has made them universally popular as means of sending short messages to correspondents and of circulating business advertisements. At the same time, as they are in the nature of an open letter, the temptation afforded by the fact that they may be read by anybody has subjected them to great abuse, and in England has caused the abolition of the whole system to be seriously discussed. Congress evidently designed by this section to prohibit this abuse, and to punish the sending of all indecent and scurrilous matter through the mails, so far as it had the power to do this without violating the sanctity of private correspondence.

So far as I am able to ascertain, the section in question has received judicial construction in but one case, namely, U. S. v. Bott [Case No. 14,626], where it was held, that under the clause punishing the sending of "articles designed for the prevention of conception or the procuring of abortion," the defendant could not show that the article deposited would not, in fact, have any tendency to produce this effect, and that its harmless character was known to him when he deposited it, it being sufficient that the article, when deposited, was put up in a form described in and manner calculated to insure its use for that purpose. It was also assumed in this case, though the point was not discussed, that it was also a misdemeanor to mail any advertisement or notice, giving information where any such article could be obtained, and that it was immaterial whether, in fact, the article or thing was at the place designated.

I can see no good reason why congress should not punish the mailing of the articles specified in the first, fourth, and fifth subdivisions, as well as those specified in the second and third. Indeed the offence of sending scurrilous postal cards is more purely personal, more exasperating to the receiver, and more likely to lead to bad blood and to breaches of the peace than any other specified in the act. Had the words "articles or things" been contained in the subdivisions immediately preceding the penal clause, there might be some foundation for the claim that it referred only to them; but I cannot believe that congress intended to select out from the middle of the prohibitory clause certain offences, and provide a punishment for them, without expressing such intent in clearer words than it has done in this section. It would certainly be a forced construction of the law to hold that congress did not intend to punish the mailing of obscene publications, when by section 1785 it imposes a penalty upon employés of the government who aid and abet persons engaged in dealing in, sending or receiving them, thus punishing the accessary, but allowing the principal to escape. I have been somewhat aided in the interpretation of this act by the case of U. S. v. Hartwell, 6 Wall. [73 U. S.] 385. The prisoner in that case was charged with embezzlement, under the act of 1846 [9 Stat. 63], known as the "Subtreasury Act," the 16th section of which provided: (1) That if any officer to whom it applied should convert to his own use, except as permitted by the act, any public money, every such act should be deemed an embezzlement. (2) That if any officer charged with the disbursement of public money should take a false voucher, every such act should be deemed a conversion of the amount specified. The penal clause then follows: "And any officer or agent of the United States, and all persons participating in such act, being convicted before any court, shall be sentenced," &c. It was held that this clause was to be taken distributively, and that it was clearly intended to apply to all the acts of embezzlement specified in the sec-

tion, to those relating to moneys in the first category, as well as those relating to vouchers in the second.

Further objection is made to this indictment that the writing upon the postal card contains no "indecent epithet," within the proper meaning of the term. The word "epithet," as defined in dictionaries, is apparently limited to adjectives and nouns, expressive of some character, quality, or attribute. In the earlier edition of Webster it is extended to nouns as well as to adjectives; in the later editions, however, it seems to be confined to adjectives, the exact meaning of the word is discussed there, and its use in the sense of "phrase," "name," or "expression" is pronounced improper. Now if the court were confined, in the interpretation of this section, to the strict grammatical definition of the word "epithet," I should be of the opinion that the writing upon this card contains no indecent epithet. Obviously, however, it could not have been the intent of congress that the word should receive this restricted meaning, or that the conviction or acquittal of a prisoner should depend upon the fact whether he employed adjectives or verbs to express his indecent or scurrilous ideas. Clearly, to call a man a "thief," or "thieving rascal," would be within the statute. Would it not be equally within the intent of the statute to say of him that he is in the habit of stealing? It is unnecessary here to decide whether the words "indecent and scurrilous epithets" were intended to include all indecent and scurrilous expressions or language —such for instance as threats couched in indecent terms, although there is much force in the argument that congress intended to prohibit the use of postal cards for the purpose of sending any indecent expressions. I am clearly of the opinion that it was not intended to confine the use of the words to nouns or adjectives; but that any form of expression which imputes to a person any indecent or scurrilous characteristic or quality is within the statute. The original signification of the word "epithet" is sometimes "put upon," "attributed," "charged," or "imputed," whatever might be the form of words employed. It so happens that adjectives are most frequently used for this purpose, and hence the meaning of the word has been gradually restricted to nouns and adjectives, and, finally, according to the present usage, to adjectives alone. The gist of the word "epithet" in this section is the thought or imputation conveyed by the words employed, and not the particular parts of speech used to convey it. I am satisfied that congress did not intend to employ the word "epithet" in its restricted sense, and my only doubt is whether the statute was not intended to embrace all scurrilous and indecent communication.

I think the jury are at liberty to infer, from the postal card in question in this case, that the writer intended to impute to the woman whose name is mentioned an illicit connection with a colored man, and hence that it contains an indecent epithet within the meaning of the statute. It is true that penal statutes must be construed strictly. That is, as observed by Mr. Justice Story, in U. S. v. Winn [Case No. 16,740]: "That penal statutes are not to be enlarged by implication, or extended to cases not obviously within their words and purport; but where the words are general, and include various classes of persons. I know of no authority which would justify the court in restricting them to one class, or in giving them the narrowest interpretation, where the mischief to be redressed by the statute is equally applicable to all of them. But where a word is used in a statute which has various known significations, I know of no rule which requires the court to adopt one in preference to another, simply because it is more restrained, if the objects of the statute equally apply to the largest and broadest sense of the word. In short, it appears to me that the proper course in all these cases is to search out and follow the true intent of the legislature, and to adopt that sense of the word which harmonizes best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature." While the liberty of the citizen is not to be taken away by an application of the statute to cases not clearly falling within the intent of the legislature, society also has its right, and the beneficent purpose of penal laws should not be frittered away by a rigid adherence to literalisms and grammatical definitions. In Winn's Case, above cited, the word "crew," as applied to seamen, was held to include the first mate; and in Hartwell's Case, supra, a clerk in the office of the assistant treasurer was held to be an officer within the meaning of the sub-treasury act. See, also, The Industry [Case No. 7,028]; U. S. v. Mattock [Id. 15,744]; U. S. v. Wiltberger, 5 Wheat. [18 U. S.] 76; The Enterprise [Case No. 4,499]; U. S. v. Hartwell, supra. The motion to quash must be denied.